UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

GLENN D.,

                              Plaintiff,

    -against-                                  3:18-CV-1388 (LEK)

ANDREW SAUL,
Commissioner of Social Security,

                              Defendant.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

On November 29, 2018, plaintiff Glenn D. filed an action in this Court under the Social Security Act. He seeks review of the determination of the Commissioner of Social Security that he was not disabled from July 14, 2015 through the date of the Administrative Law Judge's ("ALJ") decision on October 19, 2017, and is therefore ineligible for disability insurance benefits. Dkt. No. 1 ("Complaint"); see also Dkt. Nos. 6 ("Record"), 11 ("Plaintiff's Brief"), 12 ("Defendant's Brief").

For the reasons that follow, the Commissioner's determination of no disability is affirmed.

**II.    BACKGROUND**

Plaintiff is male, a veteran, and at the time of the July 2015 alleged onset date, was forty-three years old. R. at 172. He has a high school education and previous work experience as an assembler, gunsmith, and machinist. Id. at 180. He asserts that he has the following severe

impairments: posttraumatic stress disorder ("PTSD"), depressive disorder, and anxiety disorder with panic attacks. Pl.'s Br. at 2.

On October 19, 2017, the ALJ issued a decision finding Plaintiff was not disabled from July 14, 2015 through the date of the decision. R. at 28. In making this determination, the ALJ first found that Plaintiff met the Social Security Administration's ("SSA's") insured status requirements and had not engaged in substantial gainful activity since July 14, 2015, the alleged onset date. Id. at 16. Next, the ALJ found that Plaintiff had the following severe impairments: mood disorder, depression, PTSD, panic disorder with agoraphobia, and alcohol dependence. Id. at 17. The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). Id. at 18.

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant should have no more than occasional contact with co-workers, supervisors, and no contact with the public. The claimant should be limited to a low stress job, which are defined as those jobs that require occasional decision-making, occasional work judgments, and occasional changes in the work setting. The claimant should be limited to jobs that are goal oriented rather than oriented toward production pace or on assembly line. The claimant should be limited to jobs requiring simple repetitive instructions.

Id. at 19.

To make this finding, the ALJ considered Plaintiff's testimony and medical history, as well as the medical opinion evidence. The ALJ noted that "[i]n his initial application for disability, the claimant indicated that he has been unable to work since July 14, 2015 because of post-traumatic stress disorder (PTSD), depression, agoraphobia, anxiety, panic attacks,

alcoholism, and mood disorder." Id. at 20 (citing id. at 176). In an "Adult Function Report" filled out a month later, Plaintiff indicated that he was "easily irritated and annoyed when dealing with other people," "avoids crowds," "has had problems dealing with authority figures in the past," and had suffered "panic attacks in response to stress and changes in routine and . . . is incapable of dealing with even minor stressors." Id. (citing id. at 199–201). The ALJ also noted, however, that Plaintiff reported that he handled household repairs, was able to drive, and went to the store twice a week and fishing four times a week. Id. at 20. Plaintiff did not indicate any changes to his condition in his request for appeal. Id. (citing id. at 219).

The ALJ also discussed Plaintiff's testimony. As the ALJ noted, Plaintiff testified that "he is unable to return to work because of difficulties with irritability, socialization, and maintaining a regular, work schedule." Id. at 20 (citing id. at 38–41). Plaintiff described how he was eventually let go from his previous job because of his recurrent panic attacks and inability to return to work. Id. at 39–40. He also described his tendency to drink alcohol to excess to cope with his stress, though he stated that he was trying to stay alcohol free and had not had a drink in three weeks. Id. at 36–37. Plaintiff explained that many things cause him stress, including parenting his daughter, socializing, driving, and going to crowded places such as Walmart or a restaurant. Id. at 38–44. Plaintiff stated that his medications include Risperidone, Sertraline, Prazosin, and Gabapentin, and that they make him drowsy. Id. at 47–48. The ALJ observed, however, that "the claimant took his medications in the morning prior to his hearing and he was able to remain coherent and responsive." Id. at 20.

The ALJ next reviewed Plaintiff's medical history, beginning with his 2015 treatment notes from his treating psychiatrist, Dr. Beth Abrams. The ALJ noted that "consistent with the claimant's testimony, treatment notes . . . indicate a gradual worsening in symptoms leading to

3

the claimant's hospitalization in July 2015." Id. Plaintiff had informed Dr. Abrams that he planned to kill himself with a gun, and was hospitalized from July 16, 2015–July 22, 2015. Id. at 561. He reported that his stressors included his finances and a difficult work environment and that he had "nightmares, flashbacks, and intrus[]ive thoughts from [his] time in Somalia." Id.

The ALJ found that "[a]fter his discharge, the claimant continued to report improvement during follow-up therapy visits and psychiatry visits," and noted in particular that Plaintiff was "enjoying going fishing and working on home improvement tasks with his son" and that "his mental status examinations were normal." Id. at 22. In September 2015, Plaintiff had a consultative examination with Dr. Amanda Slowik, in which he reported irritability and loss of his usual interest, excessive apprehension and worry, nightmares, and hypervigilance. Id. at 261–262. However, Dr. Slowik also noted that Plaintiff appeared "coherent and goal directed with no evidence of hallucinations, delusions, or paranoia in the evaluation setting" and that his affect was "[o]f full range and appropriate in speech and thought content." Id. at 262–263.

In February 2017, Dr. Abrams increased Plaintiff's dosage of Prazosin and Gabapentin because Plaintiff reported that he was using alcohol to cope with increased stress. Id. at 23 (citing id. at 595). The ALJ observed, however, that "[b]y April 2017, the claimant was able to stop PTSD treatment as he was able to demonstrate knowledge and awareness of his symptomatic triggers and how to manage them." Id. (citing id. at 580 (progress note stating that Plaintiff "is able to recognize distortions in thinking/resurgence of PTSD [symptoms] and feels less controlled by them.")).

After reviewing the medical record, the ALJ found "that the claimant's medically determinable impairments could be reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of

these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Id. at 23.

In particular, the ALJ noted that "[c]ontrary to the claimant's alleged inability to maintain a regular work schedule, . . . the claimant regularly engages in daily activities that indicate he can actually maintain concentration and sustain pace for simple tasks in a low stress setting with minimal interpersonal contact." Id. The ALJ further noted that Plaintiff had made "rapid and steady progress regarding his ability to cope with stress and PTSD triggers in a healthy manner" and that this progress suggested that Plaintiff would "not react to stressful situations in the same manner as he did prior to his psychiatric hospitalization in July 2015." Id. at 24.

Next, the ALJ considered the medical opinion evidence. At significant issue in this case are the three medical opinions offered by Plaintiff's treating psychiatrist, Dr. Beth Abrams, and the ALJ's decision to afford these opinions partial weight. First, Dr. Abrams completed a mental capacity questionnaire on January 21, 2016. Id. at 503. On this form, Dr. Abrams indicated that Plaintiff could not perform any work for "8 hours per day, 40 hours per week, for 50 weeks per year." Id. However, she also indicated that she was not sure if Plaintiff would remain this impaired for the next twelve months, and wrote that Plaintiff "may be able to eventually, gradually return to work on a PART TIME basis to start, in a different type of job." Id. (capitalization in original). Dr. Abrams provided an additional medical source statement on March 31, 2016. Id. at 507. On that form, among other things, Dr. Abrams indicated that Plaintiff had marked limitations in his "ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," moderate limitations in his "ability to maintain attention and concentration for extended periods," and no significant limitations in his

5

"ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." Id. at 507–09.  Finally, Dr. Abrams provided an updated medical source statement on August 2, 2017, in which, among other things, she indicated that Plaintiff's impairments would cause him to miss about two days of work per month, but that he had a "limited but satisfactory" ability to "interact appropriately with the general public" and "maintain socially appropriate behavior." Id. at 1258.

The ALJ gave partial weight to each of Dr. Abrams' three medical statements. Id. at 24. The ALJ noted that he was "aware that Dr. Abrams is a treating source and an accepted medical source" and that she "directly witnessed deterioration in the claimant's mental conditions, which lead to his hospitalization in July 2015." Id. at 24–25. Nonetheless, the ALJ stated that "Dr. Abrams['] assessment from August 2, 2017 is much less restrictive than her March 31, 2016 statement. Accordingly, Dr. Abram's [sic] assessments have limited applicability as to the claimant's long-term functional restrictions." Id. at 25.

In reviewing the other medical opinions in the record, the ALJ also gave partial weight to the October 2015 statement of examining psychologist Michael Thompson, Ph.D. that Plaintiff's "PTSD symptoms are quite noteworthy . . . but do not result in permanent or total disability." Id. at 25, 850. The ALJ likewise gave partial weight to the opinion of consultative examiner Dr. Slowik that Plaintiff "would have moderate to marked limitation in his ability to maintain a regular schedule and appropriately deal with stress." Id. at 25. The ALJ also gave partial weight to the opinion of state agency psychological consultants R. Noel, Ph.D. and R. Warren, M.D. that Plaintiff is "able to perform simple and some complex work." Id. at 26. Finally, the ALJ gave limited weight to Plaintiff's VA disability rating of 80%, noting that "the standards used by the

Department of Veterans Affairs in determining disability are completely different than those used by the Social Security Administration." Id.

After reviewing the medical opinion evidence, the ALJ stated that:

> The claimant's physical functions are intact and the claimant reportedly engages in various daily activities that indicate intact cognitive function and steadily improving social skills and coping skills. Moreover, the claimant's course of treatment following his brief episode of inpatient psychiatric treatment has been generally stable. Although the claimant's ability to handle stress in the workplace and deal with the general public likely remain impaired, he is not precluded from all work activity and could sustain work activity as described in the provided residual functional capacity.

Id. at 26.

Next, the ALJ determined that Plaintiff had no past relevant work. Id. at 28. The vocational expert then testified that Plaintiff would be able to perform the requirements of "medium unskilled occupations" such as a "counter supply worker" or "laborer, stores." Id. Based on this testimony, the ALJ found Plaintiff "not disabled." Id.

The Appeals Council denied Plaintiff's request for review. Id. at 4.

## III. LEGAL STANDARD

### A. Standard of Review

When a district court reviews an ALJ's decision, it must determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial evidence amounts to "more than a mere scintilla," and it must reasonably support the decision maker's conclusion. Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). A court will defer to the ALJ's decision if it is supported by substantial evidence, "even if [the court] might justifiably have reached a different result upon a de novo review." Sixberry v. Colvin, No. 12-CV-1231, 2013 WL 5310209, at *3 (N.D.N.Y. Sept. 20, 2013) (quoting Valente v. Sec'y of

7

Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984)). However, a court should not uphold the ALJ's decision—even when there is substantial evidence to support it—if it is based on legal error. Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998).

### B. Standard for Benefits

According to SSA regulations, a disability is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). An individual seeking disability benefits "need not be completely helpless or unable to function." De Leon v. Sec'y of Health and Human Servs., 734 F.2d 930, 935 (2d Cir. 1984). To determine a claimant's eligibility for disability benefits, there is a five-step evaluation process. 20 C.F.R. § 404.1520(a)(1). If the ALJ is able to determine that the claimant is disabled or not disabled at a step, the evaluation ends. § 404.1520(a)(4). Otherwise, the ALJ will proceed to the next step. Id.

At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful work activity." § 404.1520(a)(4)(i). If so, the claimant is not disabled under SSA regulations. Id. At step two, the ALJ must determine whether the claimant has an impairment, or combination of impairments, that is "severe," i.e., that "significantly limits" the claimant's "physical or mental ability to do basic work activities." §§ 404.1520(a)(4)(ii), 416.920(c). If the claimant does not have such an impairment, the claimant is not disabled under SSA standards. Id. At step three, the ALJ asks whether the claimant's medically determinable physical or mental impairment(s) are as severe as an impairment listed in Appendix 1 of Subpart P of § 404. § 404.1520(a)(4)(iii); 20 C.F.R., Pt. 404, Subpt. P, App. 1. If so, the claimant is disabled. § 404.1520(a)(4)(iii). If not, the ALJ moves on to step four and reviews the claimant's residual functional capacity ("RFC") and past work. § 404.1520(a)(4)(iv). A claimant is not disabled

8

under SSA standards if she can perform past work. Id. If the claimant cannot perform her past work, the ALJ decides at step five whether adjustments can be made to allow the claimant to work in a different capacity. § 404.1520(a)(4)(v). If the claimant "cannot make an adjustment to other work," then the claimant is disabled. Id. In the first four steps, the claimant bears the burden of proof; at step five, the burden shifts to the SSA. Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (quoting Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996)).

## IV. DISCUSSION

Plaintiff raises two primary objections to the ALJ's decision. First, he argues that the ALJ failed to follow the treating physician rule when he gave the testimony of Dr. Beth Abrams partial, rather than controlling, weight in determining Plaintiff's RFC. Pl.'s Br. at 11. Second, Plaintiff argues that the ALJ's finding that Plaintiff's alleged symptoms were not consistent with the medical record is not supported by substantial evidence. Id. at 21.

### A. The ALJ's Consideration Dr. Abrams' Medical Opinions in Formulating RFC

Plaintiff argues that the ALJ should have given Dr. Abrams' opinions controlling weight and that the failure to fully account for her opinions—as well as the other medical opinions in the record—resulted in an RFC unsupported by substantial evidence. Pl.'s Br. at 11.

*1. Dr. Abrams' Medical Opinions and the Treating Physician Rule*

Under SSA regulations, a "treating source" is a claimant's "own acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." § 404.1527(c)(2). "[O]pinions from [a claimant's] treating sources" are given "more weight" than other sources, and are given "controlling weight" when the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record. Id. This regulation ensures that

9

the ALJ defers to the findings of the medical sources "most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)." Id.

"[G]ood reasons" must be given for declining to afford a treating physician's opinion controlling weight. §§ 404.1527(c)(2), 416.927(c)(2); Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993). The Second Circuit has noted that it "do[es] not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion." Morgan v. Colvin, 592 F. App'x 49, 50 (2d Cir. 2015) (quoting Halloran, 362 F.3d at 33.). Factors that indicate the weight to be accorded to the treating physician include: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998); see also 20 C.F.R. § 404.1527(c)(2).

The ALJ discounted Dr. Abrams' opinions because her August 2017 assessment was "much less restrictive" than her March 2016 assessment, and thus, her "assessments have limited applicability as to the claimant's long-term functional restrictions." R. at 25. Plaintiff argues that the ALJ manufactured this supposed inconsistency between Dr. Abrams' opinions and that "the ALJ failed to provide any rationale or explanation as to why each opinion was not supported at the time the opinions were made." Pl.'s Br. at 13. Defendant counters that the ALJ correctly discounted Dr. Abrams' opinion based on these inconsistencies. Def.'s Br. at 22–23. Further, Defendant argues that Dr. Abrams opinions are internally inconsistent. Id. at 23. The Court finds that the differences between the August 2017 and the March 2016 opinions—as well internal inconsistencies in the August 2017 opinion—provided the ALJ with adequate reason to afford Dr. Abrams' opinion only partial weight.

10

Defendant points to several differences between Dr. Abrams' March 2016 and August 2017 medical statements. For instance, in the March 2016 report, Dr. Abrams' noted that Plaintiff had a "marked limitation" in his "ability to complete a normal workday and work week without interruptions from psychologically based symptoms." R. at 508. However, in the August 2017 report, Dr. Abrams stated she was unable to comment on several questions related to Plaintiff's ability to work, including his ability to "maintain regular attendance and be punctual with customary, usually strict tolerances," and "complete a normal workday and workweek without interruptions from psychologically based symptoms." R. at 1257. And in that same August 2017 opinion, in a section titled "mental abilities and aptitude needed to do particular types of jobs," Dr. Abrams noted that Plaintiff had a "limited but satisfactory" ability to "interact appropriately with the general public," "maintain socially appropriate behavior," and "travel in unfamiliar places." Id. at 1258. While Plaintiff argues that the forms ask different questions and are therefore not inconsistent, Pl.'s Br. at 12, both sets of questions address Plaintiff's ability to work, sometimes with very similar wording. Compare R. at 508 with id. at 1257 (both asking for assessment of claimant's ability to "complete a normal workday and work week without interruptions from psychologically based symptoms"). Thus, the ALJ did not err is discounting Dr. Abrams' opinions based on these differences. See Lewis v. Colvin, 548 F. App'x 675, 678 (2d Cir. 2013) (holding that ALJ correctly discounted weight of treating physician's opinion in part because the "ALJ noted that Dr. Rahman's final opinion was inconsistent with his own prior opinions").

The ALJ also identified inconsistencies in Dr. Abrams' August 2017 statement. R. at 24 – 25. In that report, Dr. Abrams' predicted that Plaintiff would miss an average of two days of work per month as a result of his impairments, id at 1258, and as Plaintiff correctly notes, the

11

vocational expert testified that missing more than one day per month of work would preclude Plaintiff from all competitive employment, Pl.'s Br. at 13–14 (citing R. at 53–54). But this prediction does not align with the rest of the August 2017 report. In that same document, Dr. Abrams also stated that she was unable to comment on several inquiries closely related to Plaintiff's potential absenteeism, including his ability to "maintain regular attendance and be punctual with customary, usually strict tolerances," and "complete a normal workday and workweek without interruptions from psychologically based symptoms." R. at 1257. Thus, the ALJ also did not err in discounting Dr. Abrams' opinion for this inconsistency. See Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5, 7 (2d Cir. 2017) (noting that "the ALJ's decision not to give controlling weight to Dr. Wolkoff's opinion under the 'treating physician' rule was proper" in part because "Dr. Wolkoff's medical source statement contained internal inconsistencies"); Micheli v. Astrue, 501 F. App'x 26, 28 (2d Cir. 2012) ("A physician's opinions are given less weight when his opinions are internally inconsistent.").

Based on the above, the Court finds that the ALJ did not err in assigning Dr. Abrams' opinions partial weight. Though perhaps the ALJ could have more clearly spelled out the relevant inconsistencies, the ALJ discussed in detail Dr. Abrams' March 2016 and August 2017 opinions, acknowledged she was a treating source, and explained why he found the opinions of limited applicability to Plaintiff's long-term limitations. R. at 24–25. See Leonard v. Comm'r of Soc. Sec., No. 14-CV-1353, 2016 WL 3511780, at *3 (N.D.N.Y. May 19, 2016) ("[I]t is well established that where an ALJ's reasoning and adherence to the Regulations is clear, he is not required to explicitly go through each and every factor of the Regulation.") report and recommendation adopted sub nom. Leonard v. Colvin, No. 14-CV-1353, 2016 WL 3512219 (N.D.N.Y. June 22, 2016); Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) ("We require

no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear.").[1] Further, despite Plaintiff's protestations to the contrary, Pl.'s Br. at 14, Dr. Abrams' opinions on Plaintiff's limitations are reflected in Plaintiff's RFC, which limits him to "no more than occasional contact with co-workers, supervisors, and no contact with the public" as well as a "low stress job." R. at 19. And finally, the ALJ did not err in discounting Dr. Abrams' statement in the January 2016 report that Plaintiff could not perform any work for "8 hours per day, 40 hours per week, for 50 weeks per year," R. at 503, because, as the ALJ noted, "a finding of disability is reserved to the Commissioner," R. at 25; see Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("A treating physician's statement that the claimant is disabled cannot itself be determinative.").[2]

---

[1] Defendant also argues that "Dr. Abrams' own treatment notes, which show significant improvement in Plaintiff's symptoms, are not consistent with the disabling limitations in Dr. Abrams' opinions." Def.'s Br. at 23. Specifically, Defendant points to a May 10, 2017 note by Dr. Abrams stating that Plaintiff has "[o]verall has good benefits from medications with reduction of PTSD and mood symptoms over the past 2 years." Id. at 575–76. While Defendant is correct that an ALJ may properly discount a medical source's opinion when it diverges with their underlying treatment notes—and the Court understands why Defendant argues this statement is at odds with some of Dr. Abrams' more limiting opinions (in particular the opinion that Plaintiff would miss two days of work a month)—the Court does not endorse Defendant's argument that these opinions are inconsistent. The May 10 note that Plaintiff is showing "great improvement" does not say anything in particular about Plaintiff's ability to work, and thus the Court will not directly compare it to statements that focus on Plaintiff's ability to work. And in any event, the ALJ properly discounted Dr. Abrams' opinions for the other reasons discussed above.

[2] Plaintiff also argues that ALJ ignored the fact that mental health symptoms often "wax and wane" and improperly found improvement in the medical record despite being "unqualified to determine improvement in the absence of a medical opinion." Pl.'s Br. at 15, 19. However, the cases on which Plaintiff relies involved claimants that, unlike Plaintiff, the Commissioner had already found to be disabled. See Gray v. Comm'r of Soc. Sec., No. 18-CV-184, 2019 WL 1499141, at *2 (W.D.N.Y. Apr. 5, 2019) ("Once the Commissioner determines that a claimant is disabled, he is entitled to a presumption that the classification will not change unless the condition, governing statutes, or regulations change.") (internal quotation marks omitted).

*2. Plaintiff's RFC*

Plaintiff also argues that his RFC does not reflect the other medical opinions in the record. Pl.'s Br. at 13–14, 16–19. The Court disagrees.

RFC is "what [the] individual can still do despite his or her limitations." Gishey v. Colvin, No. 8:13-CV-1036, 2015 WL 1505674, at *7 (N.D.N.Y. Mar. 31, 2015) (Kahn, J.) (quoting Balles v. Astrue, No. 11–CV–1386, 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis[.] A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." Id. "In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations." Id. (citing 20 C.F.R. §§ 404.1545, 416.945).

The Court finds that the ALJ properly incorporated the other medical opinions in the record into Plaintiff's RFC. "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, [the ALJ is] entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013).

Plaintiff argues that the ALJ failed to incorporate Dr. Slowik's statement that Plaintiff "ability to maintain a regular schedule and appropriately deal with stress is moderately to markedly limited," Pl.'s Br. at 17 (citing R. at 264), as well as Dr. Thompson's opinion that Plaintiff "would clearly not be able to work in this setting where he had to work closely with others there was a great deal of commotion and required interpersonal contact. He does better in a work setting where he can be primarily by himself without recurring interactions with others,"

14

id. at 18 (citing R. at 850). However, as Defendant notes, the ALJ incorporated this limitation into Plaintiff's RFC by limiting him to a "low stress job" that "require[s] occasional decision-making, occasional work judgments, and occasional changes in the work setting." Def.'s Br. at 19 (citing R. at 19). See Fiducia v. Comm'r of Soc. Sec., No. 13-CV-285, 2015 WL 4078192, at *4 (N.D.N.Y. July 2, 2015) ("The fact that plaintiff was found to have a marked limitation interacting with others does not conclusively demonstrate that she is unable to work, particularly given the fact that the ALJ limited plaintiff to work that does not require more than occasional interaction with the public and co-workers."); Miller v. Berryhill, No. 16-CV-6467, 2017 WL 4173357, at *3 (W.D.N.Y. Sept. 20, 2017) (noting that doctor's opinion that claimant "would have 'moderate to marked' difficulty performing complex tasks, relating adequately with others, and appropriately dealing with stress" did not mandate a finding of disability because "[o]ther courts in this Circuit have affirmed decisions denying benefits in cases where the record contains an opinion that the claimant has a 'marked' limitation in performing a work-related function.").

**B. The ALJ's Consistency Finding**

Plaintiff argues that when the ALJ found his alleged symptoms to be "not entirely consistent with the medical evidence and other evidence in the record," R. at 23, the ALJ "failed to evaluate [his] subjective statements pursuant to the procedures and other factors set forth in 20 C.F.R. § 404.1529." Pl.'s Br. at 21. Specifically, Plaintiff first argues that the ALJ improperly relied on the fact that he engages in activities "alone, with family, and in the comfort of his own home" as evidence that he "regularly engages in daily activities that indicate he can actually maintain concentration and sustain pace for simple tasks in a low stress setting with minimal interpersonal contact." Pl.'s Br. at 21 (citing R. at 23). The Court finds that the ALJ did not err in this regard.

"It is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of the witnesses, including the claimant." Oakes v. Colvin, No. 13-CV-1374, 2015 WL 1959681, at *7 (N.D.N.Y. Apr. 29, 2015) (Kahn, J.) (quoting Aponte v. Sec'y, Dep't of Health and Human Servs., 728 F.2d 588, 591 (2d Cir. 1984)) "In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7P (S.S.A. July 2, 1996) (clarifying 20 C.F.R. §§ 404.1529 & 416.929). "[I]t is entirely appropriate for an ALJ to consider a claimant's daily activities in assessing her credibility and capacity to perform work-related activities." Lamorey v. Barnhart, 158 F. App'x 361, 363 (2d Cir. 2006) (citing 20 C.F.R. §§ 404.1529(c)(3)(i)).

Here, the ALJ appropriately considered Plaintiff's engagement in a variety of routine activities. For example, Plaintiff was able to complete home improvement tasks, garden, fish with his son, mow the lawn, grill, maintain person hygiene, and shop at Lowe's. R. at 23–24 (citing, inter alia, id. at 569); see also Lamorey, 158 F. App'x at 363–64 (holding that "substantial evidence of routine activities by [claimant was] inconsistent with her claimed total disability"). Plaintiff is correct that "[t]he mundane tasks of life performed by plaintiff do not indicate that []he is able to perform a full day of sedentary work." Polidoro v. Apfel, No. 98-CV-2071, 1999 WL 203350, at *8 (S.D.N.Y. Apr. 12, 1999). But this is not a case where the ALJ's "heavy reliance on Plaintiff's reported daily activities" lead the ALJ to improperly "discount[] almost entirely the well-supported expert testimony of licensed [physicians] regarding Plaintiff's

ability to sustain a job." Mahon v. Colvin, No. 15-CV-02641, 2017 WL 1232471, at *15 (E.D.N.Y. Mar. 31, 2017). Rather, the ALJ considered Plaintiff's daily activities along with the other medical and opinion evidence in formulating an RFC that "is for work with no public contact, restricted supervisory contact, and limited exposure to stress," R. at 23; see also Cichocki v. Astrue, 729 F.3d 172, 178 (2d Cir. 2013) (affirming decision in which "ALJ also relied on [claimant's] Daily Activities Questionnaire on which she indicated that she performed numerous daily tasks, such as walking her dogs and cleaning her house, that are consistent with a residual capacity to perform light work").

Second, Plaintiff argues that the ALJ's "sit and squirm" findings—such as his observation that Plaintiff was coherent and responsive at the hearing despite having taken the medication that reportedly makes him drowsy—were improper.

Plaintiff is generally correct that the Second Circuit has looked suspiciously on an ALJ's in person observations. See Aubeuf v. Schweiker, 649 F.2d 107, 113 (2d Cir. 1981) ("This finding also raises serious questions with respect to the propriety of subjecting claimants to a 'sit and squirm index,' and with respect to rendition by the ALJ of an expert medical opinion which is beyond his competence."). However, the Second Circuit has also repeatedly found that ALJs have not erred in making such observations. "Although such observations should be assigned only 'limited weight,' there is no *per se* legal error where the ALJ considers physical demeanor as one of several factors in evaluating credibility." Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998); see also Gates v. Astrue, 338 F. App'x 46, 49 (2d Cir. 2009) (finding that the ALJ's decision was "further supported by the ALJ's personal observation of [the claimant] during the hearing"). Here, where the observation constituted a relatively minor part of the ALJ's analysis, the Court finds that the ALJ did not err in making the observation.

The cases on which Plaintiff relies to assert the contrary are inapplicable. See Pl.'s Br. at 24–25 (citing Canty v. Colvin, No. 14-CV-6713, 2015 WL 9077651 (W.D.N.Y. Dec. 16, 2015); Nix v. Astrue, No. 07-CV-344, 2009 WL 3429616 (W.D.N.Y. Oct. 22, 2009); Ebelink v. Colvin, No. 14-CV-6726, 2015 WL 9581787 (W.D.N.Y. Dec. 30, 2015))). Cantey and Nix involved hearings in which the ALJ appeared to take an unexplained—and improper—disliking to the claimant. See Cantey, 2015 WL 9077651 at *5 ("The ALJ relied heavily on Plaintiff's demeanor during the hearing to reject his subjective complaints. . . . However, the ALJ did not explain what about Plaintiff's demeanor was so 'poor' that it warranted 'reductions' in his credibility."); Nix, 2009 WL 3429616, at *7 (holding the ALJ erred in finding the claimant not credible based on the claimant's "histrionic presentation at the hearing" because "although one might guess what the ALJ considered to be 'histrionic' from careful examination of the transcript, he makes no attempt to ground this finding in the record"). More broadly, the Nix court also observed that the "ALJ's tone in questioning the plaintiff also bears noting. It is apparent from the record that the ALJ was curt in his interactions with the plaintiff. . . . It is therefore possible that any 'histrionics' demonstrated by the plaintiff were in reaction to the ALJ's demeanor." 2009 WL 3429616, at *7. Plaintiff has not raised, and the Court has not found, any similarly concerning interactions between the ALJ and Plaintiff in the case at hand. Finally, Ebelink is inapposite because it involved an ALJ discrediting a doctor's opinion based on the doctor's own observations, not observations the ALJ made at the hearing, as occurred in the present case. See 2015 WL 9581787, at *5.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Commissioner's determination of no disability is **AFFIRMED**; and it is further

18

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:  March 12, 2020
        Albany, New York

_____
Lawrence E. Kahn
Senior U.S. District Judge